IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

SUSAN ORTEGA,

Plaintiff,

v.

BARRETT BUSINESS SERVICES, INC.; CHARLES COLMENERO; and BARBARA ABERCROMBIE,

Defendants.

Case No. 2:16-CV-00368-SU

**FINDINGS AND RECOMMENDATION**

SULLIVAN, United States Magistrate Judge:

Plaintiff Susan Ortega filed a complaint against her former employer Barrett Business Services, Inc. ("BBSI"), and two BBSI employees, Charles Colmenero and Barbara Abercrombie, in connection with BBSI's termination of her employment. Plaintiff alleges violations of the federal Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act ("Title VII"), and Oregon anti-discrimination and whistle-blower protection laws. Defendants move pursuant to the Federal Arbitration Act ("FAA") to compel arbitration and to stay the present action pending completion of arbitration. Plaintiff opposes the motion. The Court held oral argument on July 19, 2016. For the reasons that follows, the motion to compel should be granted and the case stayed pending the completion of arbitration.

## BACKGROUND

The Court does not consider the merit's of plaintiff's claims but rather whether plaintiff is required to submit them to binding arbitration under the terms of an agreement with her former employer. In August 2014, plaintiff, a Hermiston, Oregon resident, began working as a Bilingual Recruiting Specialist and Staffing Manager for BBSI. Compl., at 3; Pl.'s Resp. Mot. Compel Ex. 1, at 1 (Ortega Decl.); Defs.' Mot. Compel, at 2-3. BBSI is a Maryland corporation, and plaintiff worked at its branch office in Hermiston. Compl., at 3. Defendants Colmenero and Abercrombie supervised plaintiff during her time at BBSI. Compl., at 3; Defs.' Mot. Compel, at 2.

On August 15, 2014, plaintiff completed new-hire paperwork, including a document entitled, "Receipt and Acknowledgment of BBSI Employee Handbook" ("Handbook Acknowledgment"). Pl.'s Resp. Mot. Compel, at 2; Pl.'s Resp. Mot. Compel Ex. 1, at 2 (Ortega Decl.); Defs.' Mot. Compel, at 3; Colmenero Decl., at 2-3 (handbook acknowledgment). Defendants have submitted a copy of the document, signed by plaintiff. It includes the following paragraph:

> **Arbitration Policy**
> As stated in the BBSI Employment Agreement, if an employment dispute arises while I am employed at BBSI, I understand that BBSI requires that I agree to submit any such dispute arising out of my employment or the termination of my employment (including, but not limited to, claims of unlawful termination based on race, sex, age, national origin, sexual orientation, disability, breach of contract or any other bias prohibited by law) exclusively to binding arbitration under the federal Arbitration Act, 9 U.S.C. Sect. 1.

Colmenero Decl., at 2-3 (handbook acknowledgment) (bold typeface in original).

On August 18, 2014, plaintiff signed a BBSI "Employment Agreement" and defendant Colmenero signed as her manager. Colmenero Decl., at 4-8 (employment agreement). The agreement included an eight-paragraph arbitration clause. Colmenero Decl., at 7-8. Defendants

submitted into evidence a copy of the employment agreement. It states, in relevant part:

> 13. ARBITRATION
>
> If an employment dispute arises between Employee and the Company, both Employee and the Company agree to submit any such dispute arising out of the Employee's employment or the termination of such employment (including, but not limited to, claims of unlawful termination based on race, sex, age, national origin, disability, breach of contract or any other bias prohibited by law) exclusively to binding arbitration. The arbitration shall occur pursuant to the laws of civil procedure addressing arbitration in the state in which the dispute arises (e.g. in California, Code of Civil Procedure, Section 180, et seq.), except that the Federal Arbitration Act, 9 U.S.C. Section 1 (FAA) shall apply where state law conflicts with the FAA . . .
>
> Arbitration shall be the exclusive means of resolving any dispute arising out of Employee's employment or termination from employment by the Company and no other such action can be brought by Employee or the Company in any court. Employee and the Company hereby waive all rights to a civil court action (e.g. bench or jury trial) regarding employee's employment and the termination of Employee's employment with the Company; only the arbitrator, and neither a judge nor a jury, will decide the dispute.

Colmenero Decl., at 7 (Employment Agreement). Plaintiff does not dispute the authenticity or content of the copies submitted by defendants of the Handbook Acknowledgment and the Employment Agreement. However, plaintiff states that no one explained to her what she was signing nor did anyone provide her with photocopies of either document after she signed. Pl.'s Resp. Mot. Compel, at 2-3; Pl.'s Resp. Mot. Compel Ex. 1, at 2 (Ortega Decl.). Plaintiff states she did not receive any copies until BBSI terminated her employment and she requested a copy of her personnel file. Pl.'s Resp. Mot. Compel Ex. 1, at 2 (Ortega Decl.).

On or about October 9, 2014, defendant BBSI terminated plaintiff's employment. Compl., at 7; Defs.' Mot. Compel, at 2. Plaintiff filed timely claims with the state Bureau of Labor and Industries and the Equal Employment Opportunity Commission and received a right to sue notice.

Compl., at 2. On February 26, 2016, plaintiff filed the present complaint against defendants BBSI, Colmenero, and Abercrombie. Plaintiff alleges that defendants discriminated against her on the basis of her race, ethnicity, national origin, and disability and that they retaliated against her for speaking out about alleged age discrimination, racial discrimination, unlawful worker's compensation practices, and disability discrimination at BBSI.[1] Compl., at 7-26.

On March 25, 2016, defendants filed a Motion to Stay and Compel Arbitration. Plaintiff opposes the motion. The Court heard oral arguments in Pendleton on July 19, 2016.

**LEGAL STANDARD**

Congress enacted the FAA "to advance the federal policy favoring arbitration agreements." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008); *Hermida v. JP Morgan Chase Bank, N.A.*, 2015 WL 6739129, at *2 (D. Or. Nov. 3, 2015); *see* 9 U.S.C. §§ 1-16. The FAA states that generally arbitration agreements "shall be valid, irrevocable, and enforceable." *Id.* (quoting 9 U.S.C. § 2). Applying "the full reach of the Commerce Clause," the FAA applies to state and federal

---

[1] Specifically, plaintiff alleges the following fourteen claims: (1) that defendant BBSI retaliated against plaintiff in violation of 29 U.S.C. § 623(d) of the ADEA; (2) all defendants retaliated against her in violation 42 U.S.C. § 2000e-3(a) of Title VII; (3) defendants discharged plaintiff because of her race in violation of 42 U.S.C. § 2000e-2(b); (4) defendants violated Oregon anti-discrimination law, O.R.S. § 659A.030(1)(f), by retaliating against plaintiff; (5) defendants discriminated against plaintiff and discharged her on the basis of her "race/ color/ national origin" in violation of O.R.S. § 659A.030(1)(b); (6) defendants violated Oregon whistle-blower protection law, O.R.S. § 659A.199; (7) BBSI violated O.R.S. § 695A.112 by discharging plaintiff because she had a disability or was perceived as disabled; (8) BBSI refused to engage in the interactive process for disabled persons in violation of O.R.S. § 695A.112 and OAR 839-006-0206; (9) defendant BBSI failed to reasonably accommodate plaintiff's limitations in violation of O.R.S. §§ 695A.112 and 695A.118; (10) defendant BBSI violated O.R.S. § 659A.109 by retaliating against plaintiff; (11) defendant BBSI violated O.R.S. § 659A.040 by retaliating against plaintiff for invoking worker's compensation rights; (12) defendant BBSI wrongfully terminated plaintiff; (13) defendant Colmenero aided and abetted in discrimination and/or retaliation in violation of O.R.S. § 659A.030; and (14) defendant Abercrombie also aided and abetted in violation of O.R.S. § 659A.030. Compl., at 7-26.

claims in state and federal court alike provided that the underlying transaction or contract involves interstate commerce. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006); *Southland Corp. v. Keating*, 465 U.S. 1, 14-16 (1984).

Under the FAA, if a court is satisfied that a valid arbitration agreement applies to the claims at issue, the court must order arbitration. *Simula*, 175 F.3d at 720. The "FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.,* at 719 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)); *see KPMG LLP v. Cocchi*, 132 S. Ct. 23, 26 (2011) (per curiam); *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2011). Thus, when the FAA applies, it limits the role of the district court to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Samson,* 637 F.3d at 923-24; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see Riso, Inc. v. Witt Co.*, 2014 WL 3371731, at *5 (D. Or. July 9, 2014).

On a motion to compel arbitration, the "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Hoffman v. Citibank (S. Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Moreover, any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25

(1983); *see Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 938 (9th Cir. 2013). This applies independent of "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone,* 460 U.S. at 24-25.

## DISCUSSION

Defendants argue that the FAA requires the Court to enforce the arbitration clause in the Employment Agreement and to compel arbitration. Defs.' Mot. Compel, at 5-8, 9. In response, plaintiff argues that the FAA does not govern this case, and that the purported arbitration agreement is invalid under Oregon law. Pl.'s Resp. Mot. Compel, at 2. Alternatively, plaintiff argues that even if the Court finds the arbitration agreement valid and enforces it under the FAA, the agreement only applies to BBSI and not the individual defendants. Pl.'s Resp. Mot. Compel at 2, 6.

### I. The FAA, And Not O.R.S. § 36.620(5), Applies to the Arbitration Agreement

Whether the FAA applies here is critical. When the FAA applies, it preempts conflicting state laws that limit the enforceability of arbitration agreements. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 122-24 (2001); *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 341, 343 (2011); *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996). Plaintiff's main argument is premised on just such a law. Plaintiff argues that O.R.S. § 36.620(5) invalidates the arbitration agreement she signed with BBSI. Pl.'s Resp. Mot. Compel, at 2, 5. Enacted in 2007 and amended in 2011, O.R.S. § 36.620(5) pertains to written arbitration agreements between employers and employees, and requires an employer to provide a new employee written notice of the arbitration clause at least 72

hours before the employee begins work.[2]  Otherwise, the provision states the agreement is "voidable and may not be enforced by a court."  *Id.*  Plaintiff alleges she never received the required advance notice, and thus any arbitration agreement is invalid.  Pl.'s Resp. Mot. Compel, at 5.

Case law makes clear that the FAA and O.R.S. § 36.620(5) are mutually exclusive.  The FAA sets forth a "national policy favoring arbitration" that "forecloses state legislative attempts to undercut the enforceability of arbitration agreements."  *Preston v. Ferrer,* 552 U.S. 346, 353 (2008) (quoting *Southland*, 465 U.S. at 10, 16); *see Circuit City Stores*, 532 U.S. at 122-24.  Thus, where a state law imposes conditions specifically for arbitration agreements that go beyond the conditions in the FAA, the law is preempted by the FAA.  *Lowden*, 512 F.3d at 1219; *AT&T Mobility,* 563 U.S. at 341, 343; *Doctor's Assocs.,* 517 U.S. at 687; *Hermida*, 2015 WL 6739129, at *3.  On that basis, several Oregon District Court decisions have determined that the FAA, where applicable, preempts O.R.S. § 36.620(5).  *See, e.g., Bettencourt v. Brookdale Senior Living Communities, Inc.*, 2010 WL 274331, at *7 (D. Or. Jan. 14, 2010); *West. v. Brookdale Senior Living Communities Inc.*, 2014 WL 2829751, at *9 (D. Or. June 20, 2014); *Hermida*, 2015 WL 6739129, at *3; *Jensen v. Fisher*

---

[2] In full, O.R.S. § 36.620(5) provides:
A written arbitration agreement entered into between an employer and employee and otherwise valid under subsection (1) of this section is voidable and may not be enforced by a court unless:
    (a) At least 72 hours before the first day of the employee's employment, the employee has received notice in a written employment offer from the employer that an arbitration agreement is required as a condition of employment, and the employee has been provided with the required arbitration agreement that meets the requirements of, and includes the acknowledgment set forth in, subsection (6) of this section; or
    (b) The arbitration agreement is entered into upon a subsequent bona fide advancement of the employee by the employer.

*Commc'ns, Inc.*, 2014 WL 6851952, at *5 (D. Or. Dec. 3, 2014); *Noorzai v. Dabella Exteriors, LLC*, 2015 WL 5037669, at *3-*4 (D. Or. Aug. 25, 2015); *Anderson v. Washington Mut. Bank,* 2010 WL 4827500, at *3 (D. Or. Oct. 25, 2010), *report and recommendation adopted*, 2010 WL 4827115 (D. Or. Nov. 17, 2010).

Plaintiff does not dispute this. Instead, plaintiff argues that the FAA does not apply to the present case, because it lacks a sufficient connection to interstate commerce. The argument turns on 9 U.S.C. § 2 of the FAA, which states that a written arbitration provision in "a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[3] The Supreme Court has broadly interpreted the "involving commerce" requirement of Section 2 to encompass contracts for transactions, including employment, that "affect" interstate commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995); *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003); *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1154 (9th Cir. 2008). "We have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank*, 539 U.S. 52 at 56

---

[3] The full text of 9 U.S.C. § 2 reads:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(internal citations omitted); *see Rogers*, 547 F.3d at 1154. Thus, a court's analysis must go beyond the specific contract at issue or its narrow subject matter to consider the aggregate effect of the economic activity in question. *Citizens Bank*, 539 U.S. 52 at 56; *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1052 (D. Or. 2004). For example, in *Citizens Bank v. Alafabco, Inc.*, the Supreme Court held unanimously that the FAA applied to contracts executed in Alabama between an Alabama bank and Alabama borrowers to restructure the borrowers' debt. 539 U.S. 52. The Court held that the FAA was applicable because "in the aggregate the economic activity in question" affected interstate commerce. *Id.*, at 57-58. The Court noted, for example, that the borrowers, although based in Alabama, "engaged in business throughout the southeastern United States"; that the restructured debt was secured by assets that included parts and materials purchased out of state; and that commercial lending as an industry has a broad impact on the national economy. *Id.*, at 57-58.

Adhering to this interpretation of the FAA, district courts in the Ninth Circuit have repeatedly held that employment agreements involve interstate commerce when the defendant employer is a corporation doing business in multiple states.[4] *See, e.g., Anderson*, 2010 WL 4827500, at *1 ("Anderson's employment at WaMu, a national banking establishment, satisfies the FFA's interstate commerce requirement"); *Bettencourt*, 2010 WL 274331, at *3 ("even if Plaintiff's . . . employment

---

[4] Plaintiff's basic argument is that *Bettencourt v. Brookdale Senior Living Communities* was wrongly decided. Pl.'s Resp. Mot. Compel, at 4, 4 n.1. However, plaintiff does not address the other cases that reached the similar conclusion. Pl.'s Resp. Mot. Compel, at 4. Nor does she acknowledge the Supreme Court's unanimous opinion in *Citizens Bank*.

with Defendant did not involve interstate commerce, . . . the multi-state nature of Defendant's business, nonetheless, establishes Plaintiff's employment arbitration contract with Defendant involves or affects interstate commerce"); *Mercado v. Sally Beauty Supply LLC*, 2016 WL 3361883, at *3 (E.D. Cal. June 16, 2016) (FAA covered the employment agreement because employers "and/or their affiliates sell and distribute their professional beauty products throughout the United States"); *CarMax Auto Superstores California LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1101 (C.D. Cal. 2015) (FAA applied because defendant employer was "a national corporation that did business in thirty-six states and engaged in interstate transactions on a regular basis").

Here, plaintiff asserts that her work did not implicate interstate commerce, because she was "hired in Oregon to work in an Oregon branch to recruit employees to work in Oregon companies." Pl.'s Resp. Mot. Compel, at 4. However, nothing in plaintiff's employment agreement or declaration indicates any agreement to limit plaintiff's work to clients and recruitment within the borders of the state.[5] Plaintiff acknowledges that in the brief time she worked for BBSI, she traveled to Washington state for training. Pl.'s Resp. Mot. Compel Ex. 1, at 1 (Ortega Decl.); Defs.' Reply, at 5. Defendants allege that as part of her employment, plaintiff communicated with BBSI's corporate office in Vancouver, Washington. Defs.' Reply, at 5; Tr., at 7. In fact, plaintiff's employment was not confined exclusively within Oregon borders. However, even if the Court could find plaintiff, as an individual employee, had no involvement with interstate commerce, there is no doubt that

---

[5] There is no evidence of such an agreement or job description. Moreover, it is undisputed common knowledge that Hermiston is a short drive from the border with Washington state.

BBSI had extensive involvement. BBSI, incorporated in Maryland and headquartered in Washington, maintains branch offices and does business nationwide. Compl., at 3; Tr., at 7-9. Moreover, BBSI is in a staffing agency, in the business of recruiting and supplying labor to companies. Compl., at 4; Tr., at 7-8. Not only did plaintiff's own employment involve interstate commerce, the multi-state nature of defendant's business and industry establishes that plaintiff's contract with defendant involved interstate commerce. The FAA governs this arbitration agreement. Moreover, it preempts conflicting state law, and thus plaintiff's argument based on O.R.S. § 36.620(5) fails.

Plaintiff does not otherwise contest the validity of the arbitration agreement with BBSI nor that it covers her claims against BBSI. Accordingly, the Court should grant defendants' motion to compel as it pertains to the claims against defendant BBSI.

**II. Individual Defendants are Covered by the Arbitration Agreement**

If the Court finds that the arbitration agreement is valid and enforceable, plaintiff contends that the "agreement can only bind Plaintiff in her claims against BBSI." Pl.'s Resp. Mot. Compel, at 6. Plaintiff argues that the arbitration clause in the employment agreement "makes no indication that it is intended to cover claims directly between employees" and neither individual defendant signed the agreement on their own account. Pl.'s Resp. Mot. Compel, at 7. Defendants do not dispute that the individual defendants did not sign the agreement. Rather, they argue that the arbitration agreement between plaintiff and BBSI also covers them as agents of BBSI. Defs.' Reply, at 9

Plaintiff is correct that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). However, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045 (9th Cir. 2009); *Sacks v. Dietrich*, 663 F.3d 1065, 1070 (9th Cir. 2011); *see Balen v. Holland Am. Line Inc.,* 583 F.3d 647, 655 (9th Cir. 2009). "Federal courts have consistently afforded agents, employees, and representatives the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *Legacy Wireless,* 314 F. Supp. 2d at 1054. If arbitration agreements did not apply to nonsignatory agents, plaintiffs could easily circumvent arbitration agreements by naming only agents of a signatory company as defendants, "effectively nullifying an arbitration agreement." *Id.*; *Livingston v. Metro. Pediatrics, LLC,* 227 P.3d 796, 805 n.7 (Or. Ct. App. 2010).

Contract principles that may operate to enforce an arbitration agreement against a nonsignatory include incorporation by reference, assumption, agency, veil-piercing/alter ego, and equitable estoppel. *Mundi*, 555 F.3d at 1045; *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see Drury v. Assisted Living Concepts, Inc.*, 262 P.3d 1162, 1165 (Or. Ct. App. 2011). There is some uncertainty as to whether a court should apply federal or state substantive law concerning

these doctrines.[6] However, the Court need not decide that issue here as both state and federal law support the same conclusion: that the individual defendants may compel arbitration of the claims against them.

Both state and federal courts recognize that "nonsignatories to an arbitration agreement may benefit from the agreement where the legal basis and factual context for claims against nonsignatories are the same as claims against the signatories, where nonsignatories are employees, disclosed agents, or principal of signatory." *Livingston*, 227 P.3d at 805 n.7; *see Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*, 278 F. Supp. 2d 1041, 1048 (N.D. Cal. 2003), *aff'd*, 249 F. App'x 534 (9th Cir. 2007) (non-signatory can compel arbitration when plaintiff "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract"); *Legacy Wireless*, 314 F. Supp. 2d at 1054 (courts have repeatedly compelled arbitration on an agency theory "when a signatory has

---

[6] District courts apply federal law to determine arbitrability and state law to resolve whether parties entered into a valid and enforceable arbitration agreement. *Simula*, 175 F.3d at 719; *Samson*, 637 F.3d at 924; *Anderson,* 2010 WL 4827500, at *1. Until recently, it was established that the scope of an arbitration agreement was a matter of federal substantive law. *Letizia,* 802 F.2d at 1187; *Clausen v. Watlow Elec. Mfg. Co.*, 242 F. Supp. 2d 877, 882 (D. Or. 2002). However, in 2009, the Supreme Court held that courts are to apply "background principles of state contract law regarding the scope of [arbitration] agreements (including the question of who is bound by them)," and noted that "'traditional principles of state law' allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen*, 556 U.S. at 630. Since then, courts have expressed uncertainty on whether they must apply "traditional principles of state law" in the abstract or the law of the state governing the contract. *Kingsley Capital Mgmt., LLC v. Sly*, 820 F. Supp. 2d 1011, 1022-23 (D. Ariz. 2011) (examining the issue).

brought claims against nonsignatory agents and the agents then seek to invoke the arbitration clause against the signatory"); *Jorgens v. Janke*, 77 F. App'x 420, 421 (9th Cir. 2003) ("an agent may invoke the arbitration provision of his principal provided that the subject matter of the dispute falls within the scope of the arbitration agreement"). Furthermore, both state and federal courts have determined that "where an arbitration clause is broad enough, a nonsignatory may be able to enforce the clause against a signatory." *Drury.*, 262 P.3d at 1165 n.4 (interpreting *Livingston v. Metro. Pediatrics, LLC*, 227 P.3d 796 (Or. Ct. App. 2010)); *see Berger v. DIRECTV, Inc.*, 2015 WL 5686894, at *4 (D. Or. Sept. 22, 2015); *see also Boston Telecommunications Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 F. App'x 534, 539 (9th Cir. 2007). In *Livingston v. Metro Pediatrics, LLC*, the Oregon Court of Appeals found that the arbitration clause in an employment contract was broad enough to encompass plaintiff's nonsignatory coworkers and empower them to compel arbitration. 227 P.3d at 804-805. In particular, the court noted that the arbitration clause contained language stating that it applied to "[a]ny controversy, dispute or disagreement arising out of or relating to this agreement." *Id.*, at 803-04.

Here, plaintiff's claims against defendant BBSI are premised on the conduct of the two individual defendants acting in their capacity as agents for BBSI. The claims of misconduct against signatory BBSI and the nonsignatory defendants are clearly intertwined and interdependent. Moreover, the words of the arbitration clause here are just as broad as those in *Livingston*, providing that "arbitration shall be the exclusive means of resolving any dispute arising out of Employee's employment or termination of such employment." Colmenero Decl., at 7 (employment agreement).

Accordingly, the claims against defendants Colmenero and Abercrombie are subject to arbitration. The motion to compel should be granted in its entirety.

**RECOMMENDATION**

For the above reasons, Defendants' Motion to Stay and Compel Arbitration (Doc. #5) should be GRANTED. All claims should be STAYED pending completion of arbitration.

**SCHEDULING ORDER**

The above Findings and Recommendations will be referred to a United States District Judge for review. Objections, if any, are due September 6, 2016. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendations will go under advisement on that date.

IT IS SO ORDERED.

DATED this 19th day of August 2016.

/s/Paticia Sullivan
Patricia Sullivan
United States Magistrate Judge